UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| NDX ADVISORS, INC., NDX CAPITAL MANAGEMENT, LLC, NDX HOLDINGS, INC., NDX TRADING, INC., and ST. CROIX CAPITAL MANAGEMENT, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>ADVISORY FINANCIAL CONSULTANTS, INC. and RUTHE P. GOMEZ,<br><br>Defendants. | Case No: C 11-3234 SBA<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Dkt. 12 |

Plaintiffs NDX Advisors, Inc., NDX Capital Management, LLC, NDX Holdings, Inc., NDX Trading, Inc., and St. Croix Capital Management, LLC (collectively "Plaintiffs"), filed the instant declaratory relief action against Defendants Ruthe Gomez and Advisory Financial Consultants, Inc. (collectively "Defendants") in the Eastern Division of the Northern District of Illinois. On June 6, 2011, the Illinois district court granted Defendants' motion to transfer venue to this Court, pursuant to 28 U.S.C. § 1404(a).

The parties are presently before the Court on Defendants' motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 12. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I. **BACKGROUND**

   A. FACTUAL SUMMARY

The following summary is based on the allegations of the Complaint, which, for purposes of the instant motion, are accepted as true.

Defendant Ruthe Gomez ("Gomez") was previously the President and primary owner of Advisory Financial Consultants, Inc. ("AFC"), a securities broker-dealer registered with the Financial Industry Regulatory Authority ("FINRA") and located in Fremont, California. Compl. ¶ 4, Dkt. 1. Gomez sold AFC's assets to the principals of Enterprise Trust Company ("Enterprise") and TradeRight Corporation in late 2006. ("TradeRight"). Id. ¶¶ 4, 25.

In 2007, Defendants commenced an arbitration proceeding against TradeRight before a FINRA arbitration panel in California. Id. ¶ 3. In that proceeding, Defendants allege that John Lohmeier, President and Chief Executive Officer of Enterprise, and/or Rebecca Townsend, its Vice-President, fraudulently induced Gomez to transfer AFC's investment funds to Enterprise. Id. ¶ 30. The now-defunct Enterprise allegedly comingled Defendants' funds, resulting in losses due to speculative margin trading intended to benefit Enterprise's other customers. Id. ¶ 31. Defendants claim that TradeRight is liable for their losses due to its failure to take steps to uncover and prevent Enterprise's fraud. Id. ¶ 32. In turn, TradeRight "filed for arbitration against AFC and Gomez for her violations of her agreement with it[.]" Id. ¶ 4. The nature of that agreement is not specified in the pleadings. The two arbitration proceedings have since been consolidated. Id. ¶¶ 3-4.[1]

In 2010, Defendants joined Plaintiffs as parties to the pending arbitration on the theory that Plaintiffs are the alter ego of TradeRight. Id. ¶¶ 5, 7. According to Plaintiffs, Defendants' alter ego theory is based on "an attempted asset transfer in the second quarter of 2010 – not a sale – involving the transfer of an investment adviser license between

---

[1] In their motion papers, the parties offer differing accounts as to what has transpired in the arbitration. Since the parties offer no record support for their assertions—which, in any event, are beyond the scope of the pleadings—the Court does not consider them in connection with the instant motion.

- 2 -

TradeRight and [NDX Holdings]," but that such transfer was "never consummated." Id. Plaintiffs deny that they have any contractual relationship with Defendants, and as such, are not proper parties to the arbitration. Id. ¶¶ 10-11. In addition, Plaintiffs insist that only NDX Trading is a member of FINRA, but deny that Defendants are "customers" of that entity. Id. ¶ 12.

### B. PROCEDURAL HISTORY

On January 24, 2011, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief in the Northern District of Illinois, pursuant to 28 U.S.C. §§ 2201 and 2201. In their pleadings, Plaintiffs seek an order "preliminarily and permanently enjoining Defendants from pursuing any claim against Plaintiffs in the California arbitration" and "prohibiting Defendants from initiating or pursuing any new or additional claims against Plaintiffs other than in a court of competent jurisdiction." Compl. at 12. Jurisdiction is predicated upon diversity of citizenship, 28 U.S.C. § 1332, as Plaintiffs are citizens of Texas and Minnesota and Defendants are both California citizens. Id. ¶¶ 15-20.

In response to the Complaint, Defendants filed a motion to transfer under 28 U.S.C. § 1406 and § 1404(a), Dkt. 11, and a motion to dismiss for lack of personal jurisdiction and for failure to state a claim, Dkt. 12. On June 6, 2011, the Illinois district court granted Defendants' motion to transfer, and denied their motion to dismiss for lack of personal jurisdiction as moot. Dkt. 32, 33. The action and the pending motion to dismiss for failure to state a claim were then transferred to this Court. Dkt. 34. On September 8, 2011, Defendants renoticed their motion to dismiss on this Court's calendar for January 31, 2012. The matter has been fully briefed and is ripe for adjudication.[2]

## II. LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support

---

[2] The parties did not file new memoranda in support of their respective positions, and instead, rely on the briefs previously submitted while the action was pending in the Northern District of Illinois.

1  a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.
2  1990).  In deciding a Rule 12(b)(6) motion, courts generally "consider only allegations
3  contained in the pleadings, exhibits attached to the complaint, and matters properly subject
4  to judicial notice."  Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).  The court is
5  to "accept all factual allegations in the complaint as true and construe the pleadings in the
6  light most favorable to the nonmoving party."  Outdoor Media Group, Inc. v. City of
7  Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).  The allegations must "give the
8  defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell
9  Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).
10 Where a complaint or claim is dismissed, leave to amend generally is granted, unless
11 further amendment would be futile.  Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1087-88
12 (9th Cir. 2002).

### III.   DISCUSSION

The Declaratory Judgment Act ("DJA") provides that:  "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  In determining whether a plaintiff's claim properly invokes the DJA, courts consider "whether the facts alleged, under all of the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).  Under the DJA, a district court has the "unique and substantial discretion" to decide whether to issue a declaratory judgment.  Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995); Countrywide Home Loans, Inc., v. Mortgage Guar. Ins. Corp., 642 F.3d 849, 853 (9th Cir. 2011) ("The DJA gives district courts the discretion to decline to exercise the conferred remedial power").

Defendants contend that there is no actual controversy to sustain a declaratory judgment action ostensibly because "FINRA is the agreed upon jurisdiction for Mrs. Gomez and AFC's claims." Defs.' Mot. at 3.  Because Defendants predicate their motion on Rule 12(b)(6), the Court may reach the merits of these contentions only to the extent they are based on the pleadings or facts of which the Court may properly take judicial notice.  Swartz, 476 F.3d at 763.  A district court cannot consider extrinsic evidence without converting the motion to one for summary judgment under Rule 56 and providing the non-movant advance notice of its intention to do so.  See United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003).  Whether to convert a motion lies entirely within the court's discretion.  Yakima Valley Memorial Hosp. v. Washington State Dept. of Health, 654 F.3d 919, 925 (9th Cir. 2011).

Here, the resolution of each of Defendants' contentions impermissibly depends upon matters that may not be considered on a motion to dismiss.  First, Defendants argue that Plaintiffs are the successors-in-interest to TradeRight, and that TradeRight is obligated to arbitrate any disputes with AFC, pursuant to the terms of an Asset Purchase Agreement ("APA") entered into December 20, 2006 by Locke Haven, LLC, and AFC.  See Gomez Decl. Ex. A, Dkt. 12-4.  However, the APA is not attached to the Complaint nor is it referenced therein.  Although the Complaint makes a passing reference to an "agreement" between TradeRight and Gomez, it is unclear whether that agreement is the APA.  See Compl. ¶ 4.  As such, the Court declines to take judicial notice of the APA or its provisions. See Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994), overruled on other grounds, Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002) (citation omitted).[3]

Next, Defendants rely on FINRA Rule 13200, which they contend mandates arbitration to resolve their dispute with Plaintiffs.  Mot. at 4, 9.  This rule provides that:

---

[3] Defendants also fail to provide any citation to record in support of their contention that Plaintiffs are the successors-in-interest to TradeRight.  No such allegation appears in the Complaint which, in fact, avers the contrary.  See Compl. ¶ 7 (alleging that Plaintiffs are not the alter ego of TradeRight).

> Except as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among:
> - Members;
> - Members and Associated Persons; or
> - Associated Persons.

FINRA Rule 13200(a).[4] Defendants argue that Gomez, AFC, TradeRight and NDX Trading, were or are FINRA members or representatives and thus are bound to arbitrate their dispute under Rule 13200. Mot. at 4. As support for these assertions, Defendants request that the Court take judicial notice of various "FINRA BrokerCheck reports" which purportedy are derived from the Central Registration Depository, a securities industry online registration and licensing database. See Defs.' Request for Jud. Notice at 2 and n.1, Dkt. 12-1.

     As an initial matter, Defendants neglect to provide any citations to the specific documents contained in their voluminous Request for Judicial Notice that allegedly support their factual assertions. "The Court is *not* obligated to consider matters not specifically brought to its attention." Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 14.145.2 at 14-51 (TRG 2009). That aside, FINRA BrokerCheck reports are neither attached to nor referenced in the Complaint, and thus, are not subject to judicial notice. Nor have Defendants cited any authority to support their contention that the Court may properly take judicial notice of the purported factual representations contained in those reports. See M/V Am. Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1491 (9th Cir. 1983) (a court may take judicial notice of court records, but may not take judicial notice of the truth of the contents of all documents found therein); Lovelace v. Software Spectrum, Inc., 78 F.3d 1015, 1018 (5th Cir. 1996) (taking judicial notice of an SEC filing "only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents").

---

[4] FINRA rules are available on-line at FINRA's website, located at: http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4203 (last visited Jan. 18, 2011).

1   Defendants next assert that when Gomez became a registered representative of
2  TradeRight, she executed of a Uniform Application for Securities Industry Registration or
3  Transfer form (sometimes referred to as a Form U-4), and that such form requires the
4  arbitration of any disputes before FINRA.  <u>See</u> Defs.' Mot. at 4, 7-8.  However, Defendants
5  inappropriately attempt to support this assertion with the declaration of Gomez, which
6  cannot be considered on a motion to dismiss.  In addition, Gomez does not actually state
7  that she signed a U-4 Form.  Rather, she merely opines, on information and belief, that "all
8  registered representatives must execute a U-4 Form *and* that she is informed and believes
9  that such forms contain an arbitration clause.  Gomez Decl. ¶ 6, Dkt. 12-4.  Thus, even if
10 the Court could properly consider the Gomez's declaration, her statements are insufficient
11 to demonstrate that Plaintiffs must arbitrate their dispute with Defendants.
12   Finally, Defendants contend that this lawsuit should be dismissed because Plaintiffs
13 simply are "unhappy with how the matter is proceeding at arbitration" and are seeking a
14 second bite the apple.  Mot. at 8; Reply at 5-6.  However, Defendants have failed to provide
15 any support for these assertions.
16   At bottom, the arguments presented in Defendants' motion to dismiss are more
17 appropriately presented in a motion for summary judgment under Rule 56.  Although the
18 Court has the discretion to convert the instant motion to dismiss as a motion for summary
19 judgment, the Court declines to do so given the inadequate briefing presented—which is
20 entirely lacking in proper citations to the record.  Should Defendants decide to file a motion
21 for summary judgment, both parties are directed to familiarize themselves with Rule 56 and
22 to file briefs and supporting documents consistent with the procedural requirements and
23 legal standards governing summary judgment motions.  Among other things, the parties
24 must provide specific citations to the record identifying where the evidence supporting a
25 particular assertion may be found.  <u>See</u> Fed. R. Civ. P. 56(c)(1)(A).  A generic reference to
26 a supporting document is insufficient, and will not be considered.

IV. **CONCLUSION**

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss is DENIED.

2. The motion hearing and Case Management Conference scheduled for January 31, 2012 are VACATED.

3. The parties shall appear for a telephonic Case Management Conference on **March 1, 2012 at 3:15 p.m.** Prior to the date scheduled for the conference, the parties shall meet and confer and prepare a joint Case Management Conference Statement which complies with the Standing Order for All Judges of the Northern District of California and the Standing Orders of this Court. Plaintiffs shall assume responsibility for filing the joint statement no less than seven (7) days prior to the conference date. Plaintiffs' counsel is to set up the conference call with all the parties on the line and call chambers at (510) 637-3559. NO PARTY SHALL CONTACT CHAMBERS DIRECTLY WITHOUT PRIOR AUTHORIZATION OF THE COURT.

IT IS SO ORDERED.

Dated: January 19, 2012

_Saundra B Armstrong_
SAUNDRA BROWN ARMSTRONG
United States District Judge