UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| NDX ADVISORS, INC., NDX CAPITAL MANAGEMENT, LLC, NDX HOLDINGS, INC., NDX TRADING, INC., and ST. CROIX CAPITAL MANAGEMENT, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>ADVISORY FINANCIAL CONSULTANTS, INC. and RUTHE P. GOMEZ,<br><br>Defendants. | Case No: C 11-3234 SBA<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>Dkt. 76 |

This is a declaratory relief action brought by Plaintiffs NDX Advisors, Inc., NDX Capital Management LLC, NDX Holdings, Inc., NDX Trading, Inc. ("NDX Trading"), and St. Croix Capital Management LLC (collectively "NDX") against Defendants Ruthe Gomez ("Gomez") and her company Advisory Financial Consultants, Inc. ("AFC"). NDX seeks a judicial determination that it has no obligation to participate in an arbitration proceeding brought by AFC and Gomez now pending against NDX Trading before the Financial Industry Regulatory Authority ("FINRA").

The parties are presently before the Court on Defendants AFC and Gomez's renewed motion to compel arbitration. Dkt. 76. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS Defendants' motion and dismisses the action. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

### A. FACTUAL SUMMARY

Gomez is the founder, and until its sale in 2006, was the President and primary owner of AFC, a securities broker-dealer registered with FINRA. Compl. ¶ 4, Dkt. 1. In late 2006, Gomez sold AFC's assets to the principals of Enterprise Trust Company ("Enterprise") and TradeRight Corporation ("TradeRight"). Id. ¶¶ 4, 25. After the sale, Gomez became registered with FINRA as a representative of TradeRight. Id. ¶ 4; Answer ¶ 5, Dkt. 49. Thereafter, Enterprise allegedly comingled Gomez's assets with the funds of other Enterprise customers and engaged in speculative margin trading, which, in turn, resulted in losses to Gomez. Id. ¶ 31. Gomez also avers that she was not paid account commissions by TradeRight, as required by the terms of the asset transfer. Defs.' Request for Judicial Notice ("RJN"), Ex. D at 8-9.

In or about October 2007, AFC and Gomez commenced an arbitration proceeding against TradeRight before a FINRA arbitration panel in California. See Advisory Financial Consultants, et al. v. TradeRight Corp., FINRA Arb. No. 07-03055.[1] In that proceeding, AFC and Gomez allege that John Lohmeier, President and Chief Executive Officer of Enterprise, and/or Rebecca Townsend, its Vice-President, fraudulently induced Gomez to transfer AFC's investment funds to Enterprise. Id. ¶ 29. TradeRight is alleged to be liable for Gomez's losses due to its failure to take steps to uncover and prevent Enterprise's fraud, as well as its failure to pay Gomez her commissions. Id. ¶ 32; Statement of Claim ¶¶ 41-43.

---

[1] The Complaint makes reference to that proceeding. See Compl. ¶ 3. The Statement of Claim filed in connection with the arbitration is attached as Exhibit D to Defendants' Request for Judicial Notice ("RJN"). Though NDX takes exception to certain facts presented in the RJN, NDX has not interposed any objection to the Statement of Claim or challenged the authenticity of the copy thereof attached to the RJN. Therefore, the Court takes judicial notice of the Statement of Claim filed by AFC and Gomez in that proceeding. See Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007) ("[A] court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned.").

In 2010, AFC and Gomez joined NDX Advisors, Inc., NDX Capital Management, LLC, NDX Holdings, Inc., NDX Trading and St. Croix Capital Management, LLC as parties to the arbitration proceeding, based on the theory that they are the alter egos of TradeRight.  Compl. ¶ 7; Baldwin Decl. ¶ 3, Dkt. 67.  In February 2011, AFC and Gomez dismissed all of the NDX entities except NDX Trading from the arbitration.  Baldwin Decl. ¶ 4 and Ex. C, Dkt. 67-2.  NDX admits that NDX Trading and AFC are members of FINRA but denies that either AFC or Gomez was its "customer" or that they otherwise transacted any business with NDX Trading.  Id. ¶ 12.

### B. PROCEDURAL HISTORY

On January 24, 2011, NDX filed a Complaint for Declaratory and Injunctive Relief against AFC and Gomez in the Northern District of Illinois, pursuant to 28 U.S.C. §§ 2201 and 2202.  The Complaint seeks an order "preliminarily and permanently enjoining Defendants from pursuing any claim against Plaintiffs in the California arbitration" and "prohibiting Defendants from initiating or pursuing any new or additional claims against Plaintiffs other than in a court of competent jurisdiction."  Compl. at 12.  Jurisdiction is predicated upon diversity of citizenship, 28 U.S.C. § 1332, as Plaintiffs are citizens of Texas and Minnesota and Defendants are both citizens of California.  Id. ¶¶ 15-20.

In response to the Complaint, AFC and Gomez filed a motion to transfer under 28 U.S.C. § 1406 and § 1404(a), Dkt. 11, and a motion to dismiss for lack of personal jurisdiction and for failure to state a claim, Dkt. 12.  On June 6, 2011, the Illinois District Court granted the motion to transfer, and denied the motion to dismiss as moot.  Dkt. 32, 33.  The action and the pending motion to dismiss were then transferred to this Court.  Dkt. 34.  On September 8, 2011, AFC and Gomez renoticed their motion to dismiss on this Court's calendar.  The Court denied the motion on January 20, 2012.  Dkt. 48.

On August 10, 2012, AFC and Gomez filed a motion to compel arbitration, which the Court denied on October 18, 2012, on procedural grounds.  Dkt. 75.  On October 30, 2012, AFC and Gomez filed the instant, renewed motion to compel arbitration.  Dkt. 76.  In its motion, AFC and Gomez do not seek to compel the arbitration of any claims alleged in

the Complaint; rather, they seek "an Order compelling Plaintiff NDX Trading, Inc., to participate in the FINRA arbitration." Mot. at 7. They contend that NDX Trading is a FINRA member and therefore is obligated under Rule 13200 of the FINRA Code of Arbitration for Industry Disputes ("FINRA Code") to arbitrate the underlying claims brought against it by AFC and Gomez. Id. The matter has been fully briefed and is ripe for adjudication.

## II.   LEGAL STANDARD

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), determines the arbitrability of disputes between parties to an agreement. Agreements to arbitrate "in any maritime transaction or a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FINRA Code constitutes an "agreement in writing" within the meaning of 9 U.S.C. § 2. See Waterford Inv. Servs., Inc. v. Bosco, 682 F.3d 348, 353 (4th Cir. 2012).

A district court's role under the FAA is limited to determining: (1) whether a valid agreement to arbitrate exists; and, if it does, (2) whether the agreement encompasses the dispute at issue. Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004). If the district court determines that a valid arbitration agreement encompasses the dispute, the court must enforce the arbitration agreement in accordance with its terms. Id. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719 (9th Cir.1999) (internal quotation marks omitted). Where the claims alleged in a pleading are subject to arbitration, the Court may stay the action pending arbitration or dismiss the action. See 9 U.S.C. § 3; Sparling v. Hoffman Constr. Co., 864 F.2d 635, 638 (9th Cir. 1988).

## III. DISCUSSION

AFC and Gomez contend that the parties' obligation to arbitrate their dispute arises under FINRA Rule 13200, which provides that:

> Except as otherwise provided in the Code, a dispute must be arbitrated under the Code if <u>the dispute arises out of the business activities</u> of a member or an associated person and is between or among:
> - Members;
> - Members and Associated Persons; or
> - Associated Persons.

FINRA Rule 13200(a) (emphasis added). The FINRA Code defines "member" as "any broker or dealer admitted to membership in FINRA." <u>Id.</u> 13100(o). "The term 'associated person' or 'associated person of a member' means a person associated with a member, as that term is defined in paragraph (r)." <u>Id.</u> 13100(a). Paragraph (r) specifies that "person associated with a member" includes "[a] natural person who is registered or has applied for registration under the Rules of FINRA." <u>Id.</u> Rule 13100(r). In addition, "a person formerly associated with a member is a person associated with a member." <u>Id.</u> Rule 13100(r).[2]

Here, there is no dispute between the parties that NDX Trading and AFC are FINRA members, and that Gomez is an associated person, as defined by the FINRA Code. Opp'n at 5. They disagree, however, on whether the underlying dispute "arises out of the business activities" of a member or associated person. <u>Id.</u> For a dispute to fall within the purview of Rule 13200, it need only "pertain to matters with some nexus to the activity [of the member or associated person] actually regulated by FINRA." <u>Lorbietzki v. Merrill Lynch, Pierce, Fenner & Smith Inc.</u>, No. 2:11-cv-01585-RLH-PAL, 2011 WL 855354, at *3 (D. Nev. Mar. 9, 2011) (quoting <u>Valentine Capital Asset Mgmt., Inc. v. Agahi</u>, 174 Cal.App.4th 606, 616 (2009)).

NDX asserts that the underlying dispute does not involve the business activities of NDX Trading, since it allegedly had no direct dealings with AFC or Gomez, and that

---

[2] FINRA rules are available at its website, located at: http://www.finra.org/Industry/Regulation/FINRARules (last visited Dec. 3, 2012).

1 Gomez never was a registered representative or associated person of that entity.  Opp'n at
2 5.  This contention lacks merit.  The underlying dispute arises, inter alia, from Gomez's
3 claim that TradeRight owes her for commissions on the accounts transferred from AFC to
4 TradeRight.  In or about 2009, TradeRight allegedly went out of business and its accounts
5 were taken over by NDX Trading—<u>which AFC and Gomez allege is the alter ego of
6 TradeRight</u>.  See Baldwin Decl. ¶ 2 and Ex. B, Dkt. 68-1; RJN Ex. C at 29 (Form ADV
7 submitted to SEC by form by NDX Advisors indicating that TradeRight is doing business
8 as NDX Trading).  Thus, despite NDX's assertions to the contrary, there clearly is some
9 nexus between AFC and Gomez on the one hand and NDX Trading on the other that arises
10 from their business activities.  Although NDX disputes that it is TradeRight's alter ego,
11 there is no dispute that NDX Trading is a FINRA member subject to the FINRA Code.
12 Whether NDX is, in fact, TradeRight's alter ego goes to the merits of the underlying
13 dispute, which ultimately is not germane to whether AFC and Gomez's claim against NDX
14 Trading is arbitrable.  See <u>Christensen v. General Bldg. Contractors</u>, 952 F.2d 1073, 1077-
15 78 (9th Cir. 1991) (matters pertaining to the merits of a claim are for the arbitrator to
16 decide).

17     As an ancillary matter, NDX cites FINRA Rule 12200 and asserts that AFC and
18 Gomez were not customers of NDX Trading and therefore are not entitled to arbitrate their
19 dispute.  Opp'n at 5.  NDX is mixing apples with oranges.  There are two sets of rules for
20 arbitrations under FINRA, depending upon the nature of the dispute.  FINRA Rule 12000,
21 et seq., sets forth the rules for "customer disputes"; that is, a dispute between a FINRA
22 member (or an associated person of a member) and a customer.  In contrast, Rule 13000, et
23 seq., applies to "industry disputes," which are disputes between members and associated
24 persons, as those terms are defined by Rule 13100.  NDX's reliance on Rule 12220 and
25 related contention that Gomez was never a customer of NDX Trading are irrelevant, since
26 AFC and Gomez are relying on the FINRA rules governing industry disputes.

27
28

IV.     **CONCLUSION**

For the reasons set forth above,

IT IS HEREBY ORDERED THAT Defendants' motion to compel arbitration is GRANTED.  The instant action is dismissed.  The Clerk shall close the file and terminate all pending matters.

IT IS SO ORDERED.

Dated:  December 12, 2012

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge